IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ESLEY D. CORNELIUS, III,<br><br>    Plaintiff,<br><br>v.<br><br>POLICE DEPARTMENT OF MARION,<br>ILLINOIS, CHARLES WEIGE,<br>JESSIE THOMPSON, and<br>WILLIAM LANNOM,<br><br>    Defendants. | Case No. 23-cv-1165-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Esley D. Cornelius, III, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Cornelius alleges defendants violated his constitutional rights in connection with a traffic stop, search, and arrest.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

In his Complaint, Cornelius makes the following allegations: On May 8, 2021, while driving through Marion, Illinois, police officer Charles Weige began following him (Doc. 1, p. 6). Weige followed Cornelius for several blocks and observed him making a right turn (*Id.*). Cornelius maintains that he properly used his right turn signal, but Weige pulled Cornelius over for failure to use his signal (*Id.*).

Upon pulling Cornelius over, Weige instructed him to exit the vehicle, which he did without incident (*Id.*). Weige searched Cornelius's body and found $5,231.00 (*Id.*). Cornelius alleges the funds were to be used to purchase a vehicle (*Id.*). Weige accused Cornelius of having the money for drug purposes and indicated his intent to find drugs in the vehicle.

Weige detained Cornelius, and police officers Williams Lannom and Sergeant Jessie Thompson subsequently arrived on the scene. The officers berated Cornelius, calling him derogatory terms, and threatening to place him in jail. They placed Cornelius in the back of a patrol car and returned to his car (*Id.*).

After placing Cornelius in the patrol car, the officers asked Cornelius's passenger, Ashely N. Turner, to exit the vehicle (*Id.*). Cornelius alleges that he met Turner on Facebook and was traveling to "drop her off" when he was pulled over by Weige (*Id.*). Officers asked Turner if she had any drugs in her possession, which she denied, but a search of her person found methamphetamine (*Id.* at p. 7). Officer Weige asked Turner if she obtained the drugs from Cornelius, and she nodded in the affirmative (*Id.*). Officer Lannom placed Turner in another patrol car and the officers began searching Cornelius's

vehicle (*Id*.). Cornelius alleges that the officers tore the vehicle apart, tearing apart the doors, seats, dashboard, and console, resulting in $2,500 in damages to the vehicle (*Id*.). No drugs were found in the search.

Thompson transported Cornelius to the county jail. He was charged with possession of the drugs found on Turner, and his cash was seized by officers (*Id*.). Cornelius alleges that he was treated differently than Turner, who was not charged, because Turner is white. Cornelius is African American. He points to the racially charged language officers used during the stop and search of his vehicle as evidence of their racial motivation.

Cornelius also alleges that Weige made false statements to the state, claiming that Cornelius possessed the meth and that Cornelius's funds were found wrapped in rubber bands commonly utilized by drug traffickers. Cornelius alleges Weige had no basis for the initial traffic stop or the search of Turner. Cornelius alleges that the officers displayed racial animus throughout the stop, calling him a "drug dealing nigger" and "monkey boy" (*Id*. at p. 8).

Cornelius was charged with possession of methamphetamine. He fails to indicate whether he was ultimately convicted of the charge or exonerated (*Id*.). Either way, he is currently in IDOC custody on other, unrelated charges.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** Fourth Amendment claim against Defendants for the unlawful stop, search, seizure of Cornelius's vehicle, arrest without probable cause, and the seizure of Cornelius's stimulus funds.
>
> **Count 2:** Fourteenth Amendment equal protection claim against Defendants for racially profiling Cornelius before and during the traffic stop.
>
> **Count 3:** Illinois state law claim for false arrest and imprisonment against Defendants for Cornelius's arrest on May 8, 2021.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

**Count 1**

At this stage, Cornelius adequately states a claim in Count 1 against Charles Weige, Jessie Thompson, and William Lannom. *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014) (Traffic stop must be reasonable and based on "a reasonable articulable suspicion that [the individual] had committed, were committing, or were about to commit an offense"). Cornelius alleges that the officers lacked a reasonable articulable suspicion to initiate the stop and search his person and vehicle. *Huff*, 744 F.3d at 1009-1010; *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007) (investigatory stop requires

---

[1] This includes any potential claims under the First and Fifth Amendments as Cornelius fails to adequately allege that those rights were violated. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

4

reasonable suspicion which is "less than probable cause but more than a hunch."). He also alleges that the officers improperly arrested him when the drugs were found on his passenger and the officers coerced his passenger to say the drugs were his. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (plaintiff must demonstrate that he was arrested without probable cause)

To the extent that Cornelius argues that the Police Department of Marion, Illinois, is liable for the actions of its officers, the department is not a person for purposes of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are "persons" under [Section] 1983."). Thus, the police department is **DISMISSED with prejudice**.

**Count 2**

Cornelius also states a claim in Count 2 for equal protection violations. To state an equal protection in claim in relation to the stop, detention, and search, Cornelius must show that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). Discriminatory effect requires a plaintiff to show that he is a "member[] of a protected class, that [he is] otherwise similarly situated to members of the unprotected class, and that plaintiff [was] treated differently from members of the unprotected class." *Id.* (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)). A plaintiff must also show that "decisionmakers in [his] case acted with discriminatory purpose." *Id.* at 645. This implies that "the decisionmaker . . .selected or reaffirmed a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." *Id.* (citing *McCleskey*

5

*v. Kemp*, 481 U.S. 279, 298 (1987)). Cornelius alleges that officers used racial derogatory language during the stop, indicated their belief that they would find something in his car due to Cornelius's race, and ultimately treated his white passenger differently than him. That is enough at this stage to state a claim.

**Count 3**

Cornelius also states a claim for false arrest/false imprisonment under Illinois state law. *Boyd v. City of Chi.*, 880 N.E.2d 1033, 1044 (Ill. App. Ct. 2007) (false request requires a showing that the plaintiff "was restrained by the defendant and that the defendant acted without probable cause"); *Grainger v. Harrah's Casino*, 18 N.E.3d 265, 276 (Ill. App. Ct. 2014) (false imprisonment elements are: "(1) that the plaintiff was restrained or arrested by the defendant; and (2) that the defendant acted without reasonable grounds (*i.e.,* without probable cause) to believe that an offense was committed by the plaintiff").

## Disposition

For the reasons stated above, Counts 1-3 shall proceed against Charles Weige, Jessie Thompson, and William Lannom. The Police Department of Marion, Illinois, is **DISMISSED with prejudice**.

The Clerk of Court shall prepare for Defendants Charles Weige, Jessie Thompson, and William Lannom: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Cornelius. If a defendant fails to sign

and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Cornelius, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Cornelius, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Cornelius is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to

comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 9, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**